IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**ARTHUR MINOR, JR., et al.,**

    **Plaintiffs,**

**v.**                                                                                               Case No. 04-CV-627-DRH

**PRO-COMM COMMUNICATIONS,
INC.,**

    **Defendant.**

## MEMORANDUM and ORDER

**Herndon, District Judge:**

### I. Introduction

This matter comes before the Court following a bench trial in this Court on November 27, 2006. At the close of trial, the Court directed the parties to file proposed findings of fact and conclusions of law. Those findings/conclusions have now been filed. (Docs. 81, 82, 83, and 84.) Having heard the evidence in the case and reviewed the parties' submissions, and in accordance with **FEDERAL RULE OF CIVIL PROCEDURE 52**, the Court finds and concludes as follows:

### II. Findings of Fact

#### Nature of the Complaint

1.     This action for collection of contributions arises under Section 301 of the Labor Management Relations Act ("LMRA") of 1947, as amended, 29 U.S.C. § 185, and Sections 502 and 515 of the Employee Retirement Income Security Act

("ERISA") of 1974, 29 U.S.C. §§ 1132 and 1145.

## The Parties

2.     Local 309 is a voluntary unincorporated association with its principal office in Collinsville, Illinois. It is a labor organization in an industry affecting commerce within the meaning of the LMRA.

3.     The Local 309 Health and Welfare Fund ("Health and Welfare Fund") is a covered multi-employer "employee welfare benefit plan" as defined in Sections (3)(1) and 515 of ERISA, 29 U.S.C. §§ 1002(1), 1145 and is administered in Collinsville, Illinois. The Trustees of the Health and Welfare Fund are "fiduciaries" as defined in Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and were authorized to bring this action pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2).

4.     The NECA-IBEW Pension Benefit Trust Fund ("Pension Fund") is a covered multi-employer "employee pension benefit plan" as defined in Section (3)(2) and 515 of ERISA, 29 U.S.C. §§ 1002(2), 1145 and is administered in St. Louis, Missouri. The Trustees of the Pension Fund are "fiduciaries" as defined in Sections 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and were authorized to bring this action pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2).

5.     The Southwestern Illinois Joint Apprenticeship and Training Committee ("JATC") is a covered "employee welfare benefit plan" as defined in Section (3)(1) and 515 of ERISA, 29 U.S.C. §§ 1002(1), 1145 and is administered in Collinsville, Illinois.  The Trustees of the JATC are "fiduciaries" as defined in Sections

3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and were authorized to bring this action pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2).

6.     The National Electrical Benefit Fund ("NEBF") is a covered multi-employer "employee pension benefit plan" as defined in Section (3)(2) and 515 of ERISA, 29 U.S.C. §§ 1002(2), 1145 and is administered in Rockville, Maryland, with payments made to the Springfield, Illinois NECA office. The Trustees of the NEBF are "fiduciaries" as defined in Sections 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A), and were authorized to bring this action pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2).

7.     The National Labor Management Cooperation Committee–Illinois Chapter ("NLMCC") is an industry-wide, labor-management committee under Section 302(c)(9) of the LMRA, 29 U.S.C. § 1861(c)(9), and is not covered by ERISA.

8.     The Administrative Maintenance Fund ("AMF") is administered by the Alton-Wood River Division, Illinois Chapter NECA. The AMF was established for the purpose of administration of the Labor Agreement, and is not covered by ERISA.

9.     Defendant Pro-Comm Communications, Inc. is a corporation duly organized and existing under the laws of the State of Illinois. It is engaged in the electrical construction business with a principal business address of 1920 S. Morrison, Caseyville, Illinois, 62232.

### Facts Related to the Collective Bargaining Relationship

10.    On or about September 1, 1999, Local 309 and the Southwestern Illinois

Division-Illinois Chapter National Electrical Contractors ("NECA") entered into a South Central Illinois Telecommunications Labor Agreement ("1999 Telecommunications Labor Agreement") effective September 1, 1999 through August 31, 2002.

11. On July 26, 2002, Rebecca Cheatham, as Treasurer of Pro-Comm Communications, Inc., signed a "Letter of Assent-A" on behalf of Defendant.

12. The Letter of Assent-A bound Defendant to the 1999 Telecommunications Labor Agreement and all future Telecommunications Labor Agreements.

13. The Letter of Assent-A also outlines the procedure by which Defendant could terminate NECA's representation by providing NECA and Local 309 with 150-days written notice of termination prior to the anniversary date of the applicable Telecommunications Labor Agreement.

14. Defendant did not provide written notice terminating the Letter of Assent-A dated July 26, 2002.

15. On or about September 1, 2002, Local 309 and NECA entered into a Telecommunications Labor Agreement ("2002 Telecommunications Labor Agreement") effective September 1, 2002 through August 31, 2005.

16. On or about September 1, 2005, Local 309 and NECA entered into Telecommunications Labor Agreement ("2005 Telecommunications Labor Agreement") effective September 1, 2005 through August 31, 2008.

17. The 1999, 2002, and 2005 Telecommunications Labor Agreements ("Telecommunications Labor Agreements") each provide that they will continue in

effect from year to year unless changed or terminated.

18.     The Telecommunications Labor Agreements each contain a procedure for terminating the collective bargaining relationship whereby NECA, Local 309, or any employer must provide 90-days written notice of termination prior to the end of the applicable Telecommunications Labor Agreement.

19.     Neither NECA, Local 309, nor Defendant provided written notice terminating the 2002 Telecommunications Labor Agreement as to Defendant.

20.     Neither NECA, Local 309, nor Defendant provided written notice terminating the 2005 Telecommunications Labor Agreement as to Defendant.

### Facts Related to Defendant's Obligation to Contribute

21.     The Telecommunications Labor Agreements each require that employers file reports and pay contributions to the Funds on all hours worked by and wages paid to their bargaining unit employees within fifteen (15) days following the end of the calendar month.

22.     Since July 25, 2002, Defendant has employed the following members of the Local 309 bargaining unit: Michael Cushing, Colin Diewald, Scott Leifer, and Rodney Cheatham.

23.     Rodney Cheatham has not withdrawn his membership from the Local 309 bargaining unit.

24.     For the period from August 2002 to December 2003, Pro-Comm filed reports and paid contributions and working dues to Plaintiffs on behalf Pro-Comm's bargaining unit employees, including Rodney Cheatham.

25.     Based on reports filed by Defendant, Rodney Cheatham performed covered work for a total of 2,392 hours from August 2002 to December 2003, or an average of approximately 32 hours per week.

26.     Defendant did not submit any reports or pay any contributions or working dues to Plaintiffs after January 2004.

27.     In January 2004, Defendant ceased filing reports because it believed that the Plaintiffs breached their agreements to provide full insurance coverage for Defendant's employees.  There is no evidence that Plaintiffs actually breached their agreements to provide such coverage, however.  Consequently, Pro-Comm was contractually not justified to withhold the reports.

28.     Beginning January 1, 2004, Pro-Comm believed that the Plaintiffs had breached their contract with Pro-Comm, and considered the contract null and void.  Accordingly, Pro-Comm filed no reports and made no contributions after that date. (Trial Transcript page 80.)  Once again, there is no evidence that plaintiffs actually breached their contract with Pro-Comm.  Consequently, Pro-Comm was factually and legally not justified to withhold reports and contributions.

29.     Because Pro-Comm believed, albeit erroneously, that its contract with the Plaintiffs terminated January 1, 2004, Pro-Comm began paying its employees on a basis other than hours worked. From January 1, 2004 forward, Pro-Comm paid its employees a flat forty hours per week for any week in which the employees worked. Employees were not paid for forty hours if they did not work at all during

the week, or if they were on unemployment. (Trial Transcript page 80 – 81.)

**Facts Related to the Calculation of the Amount of Contributions Due**

30.     The rates of contributions are set out in the Telecommunications Labor Agreements and the Addenda thereto. The Trust Agreements of the Plaintiff Funds are incorporated into the Telecommunications Labor Agreements by reference.

31.     On September 27, 2004 and October 18, 2004, Plaintiffs conducted an audit of Defendant's books covering the period from July 2002 through August 2004 ("Payroll Audit").

32.     The Payroll Audit shows that Defendant did not report the full amount of hours worked and wages earned by its bargaining unit employees for the period from July 2002 through August 2004.

33.     On September 27, 2005, Defendant provided Plaintiffs with a summary report of the hours worked and gross wages earned by Defendant's bargaining unit employees, including Rodney Cheatham, for the period from August 2004 through July 2005 ("Payroll Summary").

34.     On May 26, 2005, Plaintiffs received payment of $2,500.00 from Safeco American States Insurance Company in satisfaction of a bond claim.

35.     Applying the contribution rates set out in the Telecommunications Labor Agreements and the Addenda thereto and the $2,500 bond payment, $43,767.16 in contributions and working dues are due on the hours worked and wages earned by Michael Cushing, Colin Diewald and Scott Liefer for the period from July 25, 2002 through August 31, 2005 (see Doc. 81, Appendix A), based on:

      a.      For the period from July 25, 2002 through August 31, 2004, the hours and wages reported in the Payroll Audit;

      b.      For the period from September 1, 2004 through August, 31, 2005, the average number of hours worked and wages earned per month as determined by extrapolating from the hours and wages reported in the Payroll Summary;

36.    Applying the contribution rates set out in the Telecommunications Labor Agreements and the Addenda thereto, $36,343.24 in contributions and working dues are due on the hours worked and wages earned by Colin Diewald and Scott Liefer for the period from September 1, 2005 to October 31, 2006, (see Doc. 81, Appendix B), based on the average number of hours worked and wages earned per month as extrapolated from the hours and wages reported in the Payroll Summary.

37.    Applying the contribution rates set out in the Telecommunications Labor Agreements and the Addenda thereto, $31,060.41 in contributions and working dues are due on the hours worked and wages earned by Rodney Cheatham for the period from July 25, 2002 to October 31, 2006, (see Doc. 81, Appendix C), based on:

      a.      For the period from July 25, 2002 through August 31, 2004, the hours and wages reported in the Payroll Audit;

      b.      For the period from September 1, 2004 through August, 31, 2005, the average number of hours worked and wages earned per month as

        determined by extrapolating from the hours and wages reported in the Payroll Summary; and

    c.    For the period from September 1, 2005 through October 31, 2006, the projected hours worked and wages earned per month as extrapolated from the hours and wages reported in the Payroll Summary.

38. Under the Telecommunications Labor Agreements, interest and liquidated damages are due if an employer fails to file reports and pay contributions to the Funds within fifteen (15) days following the end of the calendar month.

39. Interest and liquidated damages are due on unpaid contributions at the rates established by the Plaintiff Funds.

40. Applying the interest and liquidated damages rates to the calculation of the unreported contributions, Plaintiffs calculate that $28,549.99 in interest and $16,809.53 in liquidated damages are due on the unpaid contributions as of October 31, 2006, (see Doc. 81, Appendices A, B and C).

### III. Conclusions of Law

41. This Court has jurisdiction under Section 301 LMRA, 29 U.S.C. § 185, and Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145.

42. Venue is proper in this Court in that an action brought by Trust Fund fiduciaries may be brought in a District where the breach took place, where a defendant resides or may be found, or where the plan is administered. Section 502(e)(2) of ERISA, 29 U.S.C.§ 1132(e)(2).

43.     Defendant is an employer within the meaning of Section 301 of the LMRA, as amended, 29 U.S.C. § 185, and within the meaning of Section (3)(5) of ERISA, 29 U.S.C. § 1002(5).

44.     Defendant is bound to the 1999, 2002, and 2005 Telecommunications Labor Agreements.

45.     Defendant's failure to submit reports and failure to pay the correct amount of contributions and working dues for the period from July 25, 2002 through October 31, 2006 is a breach of the 1999, 2002, and 2005 Telecommunications Labor Agreements.

46.     Plaintiffs presented evidence that Rodney Cheatham performed covered work for an average of approximately 32 hours per week.

47.     Defendant did not overcome the presumption that the hours worked by its bargaining unit employees, including Rodney Cheatham, during the period from July 25, 2002 through October 31, 2006, as calculated by Plaintiffs, were worked in covered employment.

48.     Defendant is obligated to pay contributions and working dues, as calculated by Plaintiffs, on the hours worked by and wages paid to its bargaining unit employees including Rodney Cheatham, during the period from July 25, 2002 to October 31, 2006.

49.     Plaintiffs' method for calculating the unpaid contributions and working dues owed by Defendant based on the Payroll Audit, the Payroll Summary and extrapolation from the Payroll Summary was reasonable and the burden shifted to

Defendant to refute Plaintiffs' calculation.

50.   Defendant did not meet its burden of refuting Plaintiffs' calculation of the unpaid contributions and working dues, specifically:

   a.   Defendant did not meet its burden to refute Plaintiffs' calculation of the unreported hours and wages discovered by the Payroll Audit and the amount of contributions due on those hours and wages.

   b.   Defendant did not meet its burden of proving that any specific portion of the unreported wages discovered during the Payroll Audit were paid for reasons other than performing work.

   c.   Defendant did not meet its burden to refute the number of hours and the amount of wages reported on the Payroll Summary.

   d.   Defendant did not meet its burden of proving that Plaintiffs method of extrapolating from the hours and wages reported in the Payroll Summary to calculate the unpaid contributions and working dues for the period from September 1, 2005 to October 31, 2006 was unreasonable.

   e.   Defendant did not meet its burden of proving that contributions and dues were owed on a lesser amount of wages and hours than those claimed by Plaintiffs.

51.   Pro-Comm is obligated to Plaintiffs for $111,170.81 in unpaid contributions and working dues for the period from July 25, 2002 through October 31, 2006.

52. Plaintiffs' method for calculating the interest and liquidated damages on the $111,170.81 in unpaid contributions and working dues was reasonable and the burden shifted to Defendant to refute Plaintiffs calculation.

53. Defendant did not refute Plaintiffs calculation of the interest and liquidated damages.

54. Pro-Comm is obligated to Plaintiffs for $28,549.99 in interest and $16,809.53 in liquidated damages calculated through October 31, 2006.

55. Plaintiffs are entitled to attorneys' fees and costs, to be determined by the Court at a later date.

## IV. Conclusion

Based on the foregoing findings of fact and conclusions of law, the Court awards damages in the amount of **One Hundred Fifty-Six Thousand Five Hundred Thirty Dollars and Thirty-Three Cents ($156,530.33)** to Plaintiffs. Clerk to enter judgment accordingly.

**IT IS SO ORDERED**.

Signed this 20th day of April, 2007.

/s/      David   RHerndon
**United States District Judge**